**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | | |
|---|---|---|---|
| ANGEL WALLS, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 03-0186 (RMU) |
| | : | | |
| v. | : | Document Nos.: | 16, 19, 24 |
| | : | | |
| HENRY M. PAULSON, JR.,[1] Secretary | : | | |
| Department of the Treasury, | : | | |
| | : | | |
| Defendant. | : | | |

**MEMORANDUM OPINION**

GRANTING IN PART AND DENYING IN PART THE
DEFENDANT'S SECOND MOTION FOR SANCTIONS[2];
STRIKING THE DEFENDANT'S FIRST MOTION FOR SANCTIONS;
DENYING THE DEFENDANT'S MOTION TO DISMISS FOR FAILURE TO PROSECUTE

**I. INTRODUCTION**

This case comes before the court on the defendant's motion to dismiss the plaintiff's claims for lack of prosecution. The defendant also has two pending motions requesting that the court impose sanctions against the plaintiff for purported failures to comply with discovery requests. Specifically, the defendant requests that the court, as an appropriate sanction, dismiss the plaintiff's claims and order the plaintiff to pay the defendant's attorneys' fees. The plaintiff stays her hand with respect to the defendant's motion to dismiss for failure to prosecute, but insists that she has complied in good faith with all of the defendant's discovery requests except for her and her attorney's failure to supply signed responses. Reviewing the plaintiff's responses, the court observes that they are deficient in multiple respects. But, the plaintiff's

---

[1]     Pursuant to Federal Rule of Civil Procedure 25(d)(1), if a public officer named as a party to an action in his official capacity ceases to hold office, the court will automatically substitute that officer's successor.

[2]     Although styled as a motion to dismiss, substantively, the defendant requests that the court sanction the plaintiff.

recalcitrance does not justify dismissal at this stage.  Accordingly, the court imposes lesser

sanctions and orders the plaintiff to serve the defendant signed copies of all discovery responses.


## II.  BACKGROUND

### A.  Factual History

The plaintiff is a black female who has been employed at the Bureau of Engraving and

Printing, Office of Procurement, a subsection to the Department of the Treasury ("Treasury" or

"the defendant"), since 1989.  Compl. ¶¶ 6, 13.  In 1995, the plaintiff initially complained to the

Equal Employment Office ("EEO") of discrimination in the workplace.  *Id.* ¶ 8.  She renewed

this complaint in 2001, filing a formal complaint on October 15, 2001.  *Id.*  The plaintiff

contends that management officials, Merry Lynn Lackey and Teresa Brooks, knew about her

EEO activity and that although she was assigned duties outside of her job classification, Brooks

denied her requests for a desk audit between June 30, 2001 and August 23, 2001 in retaliation for

the EEO activity.  *Id.* ¶¶ 8-9, 23.  She alleges that management then reduced her job

responsibilities and that Brooks told others that the plaintiff was not qualified for a promotion.

*Id.* ¶¶ 8-9.  The plaintiff asserts that Lackey then "wrongfully accused [her] of violating

regulations [by] working beyond her duty hours" and deliberately gave her a negative and

inaccurate performance rating on November 2, 2001.  *Id.* ¶¶ 8-9, 22, 28.  The plaintiff adds that

on December 12, 2001, Lackey and Brooks did not select her for a Contract Specialist position.

*Id.* ¶¶ 8-9, 35.  These acts, the plaintiff concludes, constitute a hostile work environment,

retaliation and discrimination in violation of Title VII of the Civil Rights Act, 42 U.S.C. §§

2000e *et seq.*

### B.  Procedural History

The plaintiff filed suit against the Department of the Treasury on February 5, 2003.  *See generally* Compl.  The defendant filed its answer on October 9, 2003, and the court held an initial status conference on January 22, 2004, at which time the court set deadlines for discovery. Except where noted, the plaintiffs do not quibble with the following facts underlying the parties' discovery dispute.  On May 24, 2004, the defendant propounded requests for admissions, interrogatories and requests for documents.  Def.'s First Mot. for Sanctions ("Def.'s First Mot."), Exs. 1-3.  The defendant unilaterally extended the deadline for responding to these requests twice – once until July 16, 2004 and then again until July 21, 2004.  *Id.*, Ex. 4.  The certificate of service attached to the plaintiff's response to the defendant's discovery requests indicate that the plaintiff met the July 21, 2004 deadline, although the defendant insists that it did not receive the responses until after July 21, 2004.  *Id.* at 4.

Regardless of when the plaintiff served the responses, the defendant claims that they were deficient in several respects: (1) the plaintiff failed to sign the interrogatories under oath; (2) she failed to respond to interrogatory No. 7; (3) she improperly invoked Federal Rule of Civil Procedure 33(d) in response to interrogatory Nos. 5 and 13; and (4) she claimed certain documents did not exist when at her deposition she admitted they were available and relevant to her claims.  *Id.* at 4-5 & Exs. 5-6.  Indeed, at her deposition, the plaintiff identified four sets of documents relevant to her claims that were not previously disclosed: "(1) a journal or diary documenting the events related to her allegations; (2) documents the plaintiff believes are 'negative write-ups' in her personnel file; (3) daily harassing e-mails; and (4) doctor's reports and other medical records relevant to damages."  *Id.* at 5.

After this disclosure, the defendant extended the deadline once more until September 24, 2004, so that "the defects [would] be cured, and complete, non-evasive responses provided." *Id.*, Ex. 10.  The plaintiff provided supplemental responses on November 22, 2004, which included medical records, but otherwise "ignored this stipulated deadline and failed to comply with her discovery obligation to supplement discovery responses known to be incomplete." *Id.* at 6; Def.'s Second Mot. for Sanctions ("Def.'s Second Mot.") at 3.  This precipitated the defendant's first motion for sanctions and motion to exclude evidence, filed December 8, 2005.[3]

Rather than rule on the defendant's motion for sanctions, the court stayed the case so that the plaintiff could amend her discovery responses on or before September 16, 2005.  Min. Order (Aug. 2, 2005).  The plaintiff disregarded this order and allegedly submitted supplemental materials on or around October 16, 2005.  Joint Status Report (Apr. 20, 2007); *see* Pl.'s Opp'n at 8 & Ex. 1 at 17.  The defendant insists that it received no such supplement, Def.'s Second Mot. at 4, and after the parties filed a joint status report on April 20, 2007, the defendant filed a second motion for sanctions on May 3, 2007, *id.*  Attached to the plaintiff's opposition to the defendant's second motion for sanctions is a copy of the supplemental responses the plaintiff allegedly served the defendant in October 2005.  Pl.'s Opp'n, Ex. 1.  In its reply, the defendant maintains that it first received the plaintiff's supplement as an attachment to the plaintiff's opposition to the pending motion.  Def.'s Reply at 4.  Because it is now ripe for for review, the court now turns to the defendant's second motion for sanctions.

---

[3]    The court notes that the defendant filed these motions in contravention of paragraph 9 of the court's Standing Order, which requires parties to obtain leave from the court before filing a discovery-related motion.  Standing Order (June 23, 2003) ¶ 9.  The parties fail to mention these requirements, and accordingly, the court strikes the defendant's first motion for sanctions and motion to exclude evidence filed December 8, 2004.

### III.  ANALYSIS

### A.  Legal Standard for Rule 33(b) and Rule 34

Rule 33 of the Federal Rules of Civil Procedure sets forth the procedures for discovery through interrogatories.  FED. R. CIV. P. 33.   Pursuant to Rule 33(b)(3), "[e]ach interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath." *Id.* at 33(b)(3).  "A party to whom an interrogatory is propounded 'must provide true, explicit, responsive, complete, and candid answers.'"  *Equal Rights Ctr. v. Post Props., Inc.*, 246 F.R.D. 29, 32 (D.D.C. 2007) (quoting *Hansel v. Shell Oil Corp.*, 169 F.R.D. 303, 305 (E.D. Pa. 1996)); *Miller v. Doctor's Gen. Hosp.*, 76 F.R.D. 136, 140 (W.D. Okla. 1977) (adding that "answers to interrogatories must be responsive, full, complete and unevasive[; t]he answering party cannot limit his answers to matters within his own knowledge and ignore information immediately available to him or under his control").  The responding party has 30 days to answer the interrogatories unless a shorter or longer time is allowed by the court or agreed to in writing by the parties.  FED. R. CIV. P. 33(b)(2).  Failure to answer an interrogatory within the time period provided subjects that party to sanctions under Rule 37(d).  FED. R. CIV. P. 37(d).

Rule 34 of the Federal Rules of Civil Procedure sets forth the procedures for "production of documents, electronically stored information, and tangible things, or entering onto land, for inspection and other purposes."  FED. R. CIV. P. 34.  Under Rule 34, a party must produce all discoverable documents, information or things in response to a request that are in the producing party's "possession, custody, or control."  FED. R. CIV. P. 34(a)(1).  "[F]ederal courts have consistently held that documents are deemed to be within the 'possession, custody or control' for purposes of Rule 34 if the party has *actual* possession, custody or control, or has the legal right to obtain the documents on demand."  *See In re Bankers Trust Co.*, 61 F.3d 465, 469 (6th Cir.

1995); *Kifle v. Parks & History Ass'n*, 1998 WL 1109117, at *1 (D.D.C. Oct. 15, 1998).  Failure

to follow this rule will also subject that party to sanctions under Rule 37(d).  FED. R. CIV. P.

37(d).

### B.  Legal Standard for Sanctions

Sanctions are integral to the operation of the judicial system.  *Bristol Petroleum Corp. v.

Harris*, 901 F.2d 165, 167 (D.C. Cir. 1990).  As this Circuit has stated, sanctions "have been

entrusted to the district courts to enable district judges to discharge efficiently their front-line

responsibility for operating the judicial system."  *Id.* (citing Rules 11 and 37 in upholding

dismissal for the plaintiff's failure to appear at a status conference).  The most severe sanctions

"must be available to the district court in appropriate cases, not merely to penalize those whose

conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to

such conduct in the absence of such a deterrent."  *Nat'l Hockey League v. Metro. Hockey Club*,

427 U.S. 639, 643 (1976) (upholding the trial court's dismissal under Rule 37 for violations of

pretrial discovery orders).

That said, "[b]ecause disposition of cases on the merits is generally favored," the most

drastic sanctions are "'sanction[s] of last resort,' to be used only when less onerous methods . . .

will be ineffective or obviously futile."  *See Webb v. District of Columbia*, 146 F.3d 964, 971

(D.C. Cir. 1998) (citing *Shea v. Donohoe Constr. Co.*, 795 F.2d 1071, 1075 (D.C. Cir. 1986)).[3]

Generally, the imposition of less severe sanctions, such as the award of attorneys' fees, may be

"sufficiently effective in alerting an irresponsible litigant to the seriousness of his or her neglect,

---

[3]    This Circuit requires willfulness, bad faith or at least gross negligence to justify dismissal under
Rule 37(b), while resorting to less severe sanctions for failing to respond to discovery requests.
*Weisberg v. Webster*, 749 F.2d 864, 871 (D.C. Cir. 1984) (citing *Nat'l Hockey League*, 427 U.S.
at 640 and *Societe Int'l pour Participations Industrielles et Commerciales v. Rogers*, 357 U.S.
197, 212 (1958)).

protecting the interests of the other litigants in the case, and vindicating the integrity of the

court." *C.K.S. Eng'rs, Inc. v. White Mountain Gypsum Co.*, 726 F.2d 1202, 1209 (7th Cir. 1984).

In those cases where a court orders a dismissal or enters a default judgment, the disobedient

party typically has engaged in a pattern of noncompliance with court orders so that no lesser

sanction is warranted. *Secs. & Exch. Comm'n v. Hollywood Trenz, Inc.*, 202 F.R.D. 3, 7 (D.D.C.

2001) (citing 6A FED. PRAC. & PROC. § 1531).

### C. The Plaintiff's Discovery Responses Are Inadequate

### 1. Interrogatory 13

The defendant first takes issue with the plaintiff's response to Interrogatory 13.[4]

Although the defendant contends that the plaintiff improperly invoked Rule 33(d) by referring to

affidavits and other documents prepared during the EEO administrative proceedings, Def.'s

Second Mot. at 14, the supplemental interrogatory responses that the plaintiff claims to have

served on the defendant in October 2005 contain no such references, Pl.'s Opp'n, Ex. 1.  The

defendant's only remaining argument is that the plaintiff's response to Interrogatory 13

improperly refers back to Interrogatory 3.  Def.'s Reply at 7.  The plaintiff offered no response to

this argument, as the defendant raised it for the first time in its reply brief.

To determine whether the plaintiff proffered an acceptable response, the court must first

review the interrogatories.  Interrogatory 3 requests that the plaintiff "[s]tate in detail the basis

for [her] allegation that [Treasury] has engaged in retaliation and reprisal against [her], being

---

[4]      In the defendant's second motion for sanctions – before it claims it received the plaintiff's
supplemental response to the interrogatories, which she filed with her opposition to the
defendant's second motion for sanctions – the defendant claims that the plaintiff's response to
Interrogatory 3 is "incomplete and evasive" in that it fails to provide the requested details and
refers to her hostile work environment claim when the interrogatory requests information about
her retaliation claim.  Def.'s Second Mot. at 13 n.5 (incorporating Def.'s First Mot. at 13).  The
defendant appears to have dropped these qualms after receiving the supplemental response or at
least failed to sufficiently clarify its arguments for adjudication in light of the plaintiff's
supplemental responses.  Def.'s Reply at 7.

sure to identify all persons, opinions, and documents that [the plaintiff] contend[s] support [her]

allegation of retaliation."  Def.'s Second Mot., Ex. 2.  In response, the plaintiff provides an 8-

page narrative of the events that form the bases of her claims and includes dialogue between the

plaintiff and her supervisors, particularly Brooks.  Pl.'s Opp'n, Ex. 1 at 3-11.  Interrogatory 13

then requests that the plaintiff:

> describe in detail any derogatory statement made about [her], or any
> discriminatory or retaliatory action taken against [her], by [Teresa Brooks, Lynn
> Huggins or Carol Seegars], including each and every instance of discrimination
> or retaliation, the date and location of such actions, the nature of such actions,
> and how such actions were discriminatory or retaliatory.

Def.'s Second Mot., Exs. 2, 5.  In response, the plaintiff simply refers back to her response to

Interrogatory 3.  Pl.'s Opp'n, Ex. 1 at 11.  But the defendant protests that the two interrogatories

"seek different information" – namely, Interrogatory 13 requests specific "statements suggesting

retaliatory animus."  Def.'s Reply at 7.

While not "strictly proper," *Guruwaya v. Mongomery Ward, Inc.*, 119 F.R.D. 36 (N.D.

Cal. 1988), there is authority that one may answer one interrogatory by referring to another

interrogatory, *Trabon Eng'g Corp. v. Eaton Mfg. Co.*, 37 F.R.D. 51, 60 (N.D. Ohio 1964); *but

see Equal Rights Center*, 246 F.R.D. at 34 (rejecting a responses to interrogatories that referred

to other interrogatories even though the interrogatories were similar).  Such determinations must

be made on a case-by-case basis, 8A FED. PRAC. & PROC. § 2177; here, the plaintiff's response to

Interrogatory 3 fails to provide "any derogatory statement made about [the plaintiff], or any

discriminatory action taken against [her], by [Huggins or Seegars]" as requested by Interrogatory

13.  Stated differently, although the plaintiff provided statements made and actions taken by

Brooks, she failed to provide statements made or actions taken by Huggins and Seegars.  Thus,

the plaintiff's response is inadequate.

## 2.  Interrogatory 16

Interrogatory 16 requests, *inter alia*, the costs for "each and every physical, emotional or mental ailment, loss, disability and medical condition for which [the plaintiff has] sought or received treatment at anytime in the last ten years."  Def.'s Second Mot., Ex. 5 at 10.  The defendant claims that the plaintiff's responses are insufficient because there is "no information concerning the cost of plaintiff's treatment for her alleged injuries."  Def.'s Reply at 8.  After reviewing the plaintiff's responses, it is clear that she has not provided the costs of her treatments as requested by the defendant, and therefore, her responses are inadequate under the Rule 33(b)(3), which requires responses to be "answered separately and fully in writing under oath."  FED. R. CIV. P. 33(b)(3); Def.'s Seond Mot., Ex. 5; Pl.'s Opp'n, Ex. 1 at 14-16.

## 3.  Failing to Sign Responses

The defendant also notes that the plaintiff failed to sign her interrogatory responses as required by Federal Rule of Civil Procedure 33(b)(5) and 26(g)(2).  Def.'s Second Mot. at 14.  The plaintiff responds that this failure is "harmless" and that this was "the only transgression committed."  Pl.'s Opp'n at 2.  The plaintiff adds that she offered to sign the interrogatories at her deposition, but the defendant agreed to accept her responses unsigned.  Pl.'s Opp'n at 5.  The plaintiff apparently misinterprets the Federal Rules as optional.  They are not.  Rule 33(b)(5) could not be more clear: "The person who makes the answers must sign them, and the attorney who objects must sign any objection."  FED. R. CIV. P. 33(b)(5).  This requirement is critical because "interrogatories serve not only as a discovery device but as a means of producing admissible evidence; there is no better example of an admission of a party opponent, which is admissible because it is not hearsay, than an answer to an interrogatory."  *Melius v. Nat'l Indian Gaming Comm'n*, 2000 WL 1174994, at *1 (D.D.C. July 21, 2000) (internal citation omitted).

Moreover, the plaintiff not only failed to sign her initial response to the interrogatories, but she also failed to sign her supplemental response. Def.'s Second Mot., Ex. 5; Pl.'s Opp'n, Ex. 1. Accordingly, the plaintiff is subject to sanctions for this oversight as well.

### 4.  Requests for Documents

The plaintiff's failures are not limited to her interrogatory responses. The defendant cites as insufficient the plaintiff's responses to the defendant's Requests for Production of Documents 2, 3 and 7, which inquire about any documents that the plaintiff believes substantiates her allegations and claims for damages including "handwritten or typed notes, diaries, journals, logs, letters, memoranda and other documents." Def.'s Second Mot., Ex. 3. The plaintiff initially responded that (1) the documents supporting her allegations could be found in the "EEOC investigative file"; (2) notes, diaries, journals, logs, letters, memoranda and other documents did not exist; and (3) documents supporting her damages claims either did not exist or would be supplemented "as discovery continues." Def.'s Second Mot., Ex. 6. Several months after she provided these responses, the defendant deposed the plaintiff, and she admitted that certain documents relevant to her claims were available (*e.g.*, the plaintiff's journal, negative write-ups, harassing e-mails and medical records). Def.'s First Mot. at 19-20; Def.'s Second Mot. at 14-15.

The defendant then gave the plaintiff until September 24, 2004 to correct her earlier responses. Def.'s Second Mot. at 15. This deadline passed without an amended response. Finally, on November 22, 2004, the plaintiff supplemented her response to the defendant's requests for documents by supplying medical records. Def.'s Second Mot., Ex. 11. Over a year later, allegedly in October 2005, the plaintiff again supplemented her response to the defendant's request for documents by referring the defendant to the "EEOC investigative file" for the

harassing e-mails and the negative write-ups.[5]  Pl.'s Opp'n, Ex. 1.  As for the journal, the

plaintiff's supplemental response refers to a non-existent "Exhibit 3 attached."  *Id.*

Consequently, the plaintiff's response remains deficient.

### 5.  Impermissible Delay

Rule 33(b)(2) requires the responding party to "serve its answers and any objections

within 30 days after being served with the interrogatories."  FED. R. CIV. P. 33(b)(2).  This period

may be extended by agreement of the parties, but failure to answer an interrogatory within the

agreed-upon time subjects that party to sanctions under Rule 37(d).  FED. R. CIV. P. 37(d).  In

addition, Rule 26(e) requires a party to supplement or correct its disclosure or response "in a

timely manner."  FED. R. CIV. P. 26(e)(1)(A).  And failure to supplement information in

accordance with Rule 26(e) precludes the party from using that information "on a motion, at a

hearing, or at a trial, unless the failure was substantially justified or harmless."  FED. R. CIV. P.

37(c)(1).

The plaintiff demonstrates a penchant for lengthy delays, inadequate responses and a

complete disregard for deadlines.  After the defendant agreed to several extensions of time to

respond to its requests, the plaintiff's responses on or around July 19, 2004 were inadequate.  For

instance, in that initial response the plaintiff answered Interrogatory 7, "to be provided."  Def.'s

Second Mot. at 14.  Additionally, the plaintiff's responses to Interrogatories 6 and 16 omitted

relevant materials she disclosed at her deposition several months later.  Def.'s Second Mot., Ex.

---

[5]      The defendant does not explicitly challenge the plaintiff's assertion that she has no obligation to
produce the harassing e-mails and negative write-ups because they "may be derived or
ascertained from the business records of the defendant by inspection of *plaintiff's 'personnel file'
and, The Investigative Report, U.S. Department of the Treasury*."  Pl.'s Opp'n at 11.

5.  The plaintiff did not amend these responses[6] until – at the earliest – October 2005.[7]  Not once does the plaintiff offer an explanation for the delay; rather, the plaintiff surmises that she complied with Rule 26(e)'s "duty seasonably to amend a prior response to an interrogatory, request for productions, or request for admission."  Pl.'s Opp'n at 12-13.  The court disagrees.  Here, the delay runs into years, making the plaintiff's foot-dragging especially egregious.  Accordingly, the plaintiff has failed to comply with Rule 26(e).

### D.  The Court Sanctions the Plaintiff

Having violated Rule 26(e), the plaintiff is subject to sanction under Rule 37(c)(1), which contains an "automatic and mandatory" exclusion sanction unless the plaintiff has shown that the violation is "either substantially justified or harmless."  *Elion v. Jackson*, 2008 WL 921854, at *3 (D.D.C. Apr. 7, 2008) (quoting *NutraSweet Co. v. X-L Eng'g Co.*, 227 F.3d 776, 785-86 (7th Cir. 2000)).  The defendant asserts that it has been prejudiced "because three key witnesses have become less immediately available or unavailable altogether."  Def.'s Second Mot. at 9.  In 2005, Sandra Hutchinson, the Chief of the Office of Human Resources at the time the plaintiff requested her desk audit, passed away, and two others, Charles Rodney and Lynn Lackey, no longer work at the Department of the Treasury.  *Id.*  The plaintiff retorts that her delay did not prevent the defendant from deposing these witnesses at an earlier time, which would have

---

[6]     The plaintiff's supplemental response on November 22, 2004 related only to the defendant's requests for documents.  Def.'s Second Mot., Ex. 11.

[7]     The court has serious doubts as to the veracity of the plaintiff's claim that she served the defendant with supplemental discovery responses in October 2005.  The defendant has proffered two declarations stating that the first time it received these responses was as an attachment to the plaintiff's opposition to the defendant's second motion for sanctions.  Def.'s Reply, Ex. 1-2.  The plaintiff offers no counter evidence other than an *unsigned* certificate of service dated the "162th [sic] day of October."  Pl.'s Opp'n, Ex. 1.  The certificate does not mention the year the response was allegedly served.  *Id.*  Even if the plaintiff did serve the response in October 2005, it comes well over a year after the initial responses were due and over a month after the September 16, 2005 deadline the court referenced in directing the plaintiff to "provide more detailed discovery."  Min. Order (Aug. 2, 2005).  The plaintiff's habitual disregard for deadlines, even ones imposed by the court, is both disrespectful and unprofessional.

enabled the defendant to use Hutchinson's testimony under the appropriate hearsay exception. Pl.'s Opp'n at 9.  And as to the other witnesses, the plaintiff maintains that there remain methods to locate and obtain information from these individuals for trial.  *Id.* at 9-10.  The court agrees that the plaintiff's delay did not harm the defendant's ability to gather information that is now otherwise unavailable and with no trial date set or dispositive motions' schedule in place any prejudice to the defendant is not substantial.  *Int'l Truck & Engine Corp. v. Caterpillar, Inc.*, 2004 WL 3217760 (N.D. Ind. May 26, 2004) (denying a Rule 37(c)(1) motion because "trial is ten months away and any prejudice can be easily remedied by a motion to reopen fact discovery and/or extend expert discovery").

Rule 37(c)(1) also permits the court "[i]n addition to or in lieu of this [exclusion] sanction . . . to impose other appropriate sanctions," which include "payment of reasonable expenses, including attorney's fees, caused by the failure," informing the jury of the party's failure and "any of the orders listed in Rule 37(b)(2)(A)(i)-(vi)."  FED. R. CIV. P. 37(c)(1)(A)-(C).  These possible sanctions under Rule 37(c)(1)(C) include the available sanctions for the plaintiff's discovery violations discussed above.  *Compare* FED. R. CIV. P. 37(c)(1)(C) (providing for sanction listed in Rule 37(b)(2)(A)(i)-(vi)) *with* FED. R. CIV. P. 37(d)(3) (same).  The imposition of the number and type of sanctions employed under Rule 37(b)(2) is left to the discretion of the trial judge.  FED. PRAC. & PROC. §§ 2284, 2289 ("stating that [w]ith a rule as flexible as Rule 37, inevitably a broad discretion must be given the trial judge with regard to sanctions").  But dismissal of a lawsuit never heard on its merits is a drastic step, normally to be taken only after unfruitful resort to lesser sanctions.  *Qawiy v. Nat'l R.R. Passenger Corp.*, 2006 WL 3377985, at *2 (D.D.C. Nov. 1, 2006).  Indeed, the D.C. Circuit has indicated that "default judgment must be a 'sanction of last resort.'"  *Butera v. District of Columbia*, 235 F.3d 637, 661 (D.C. Cir. 2001)

13

(quoting *Shea v. Donohoe Constr. Co.*, 795 F.2d 1071, 1075 (D.C. Cir. 1986)).  Generally, the imposition of less severe sanctions, such as the award of attorney's fees, may be "sufficiently effective in alerting an irresponsible litigant to the seriousness of his or her neglect, protecting the interests of the other litigants in the case, and vindicating the integrity of the court." *C.K.S. Eng'rs, Inc.*, 726 F.2d at 1209.

Despite the admonitions from the Circuit on dismissing cases on account of discovery abuses, the defendant requests that the court forge ahead and dismiss the plaintiff's complaint for her discovery failings.  Def.'s Second Mot. at 10-17.  The court declines the defendant's request, because the severity of the plaintiff's conduct does not warrant dismissal; lesser sanctions are more appropriate in this instance.[8]  *Bristol*, 901 F.2d at 167 (noting that "dismissal is in order only when lesser sanctions would not serve the interest of justice").

In light of the plaintiff's numerous violations outlined *supra*, the plaintiff will pay the defendant's attorneys' fees and costs associated with the preparation of its second motion for sanctions, and the plaintiff is precluded from presenting "any and all handwritten or typed notes, diaries, journals, logs, letters memoranda and other documents, regardless of when such documents were prepared" that are not in the "EEOC investigative file" or have not otherwise been produced to the defendant.  Furthermore, the plaintiff must serve signed copies of all interrogatory responses and supplements.  The plaintiff must now understand that this court will actively entertain dismissal for future failures as discussed in this opinion.

---

[8]   The defendant also requests that the court dismiss the plaintiff's complaint for failure to prosecute.  Def.'s Second Mot. at 4-10.  This case, however, does not necessitate dismissal on such grounds because the court stayed the case on August 2, 2005 and "the United States judicial system strongly favors the adjudication of cases on its merits." *Qawiy v. Nat'l R.R. Passenger Corp.*, 2006 WL 3377985, at *2 (D.D.C. Nov. 1, 2006) (citing *The English-Speaking Union v. Johnson*, 353 F.3d 1013, 1021 (D.C. Cir. 2004)); *see Gardner v. United States*, 211 F.3d 1305, 1309 (D.C. Cir. 2000) (observing that dismissal pursuant to Rule 41(b) is a drastic step, normally to be taken "after unfruitful resort to lesser sanctions").

## IV.  CONCLUSION

For the foregoing reasons the court grants in part and denies in part the defendant's

motion for sanctions.  Furthermore, the court strikes the defendant's first motion for sanctions

and denies its motion to dismiss for failure to prosecute.  An order consistent with this

Memorandum Opinion is separately and contemporaneously issued this 27th day of May, 2008.


RICARDO M. URBINA
United States District Judge